# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOHN P. STRUTZ,                                    Case No. 1:11-cv-900
      Petitioner,

                                 Spiegel, J.
      vs.                                          Bowman, M.J.

WARDEN, LEBANON                            **REPORT AND**
CORRECTIONAL INSTITUTION,                  **RECOMMENDATION**
      Respondent.

Petitioner has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the petition, respondent's return of writ and petitioner's reply. (Docs. 4, 10, 11).

## I.      PROCEDURAL HISTORY

### State Trial and Appellate Proceedings

In August of 2009, the Hamilton County, Ohio grand jury returned two indictments charging petitioner with two counts of tampering with evidence, two counts of murder, and one count of gross abuse of a corpse.[1] (*See* Doc. 10, Ex. 2-5). Following a bench trial, petitioner was found guilty of one count of murder, two counts of tampering with evidence and one count of gross abuse of a corpse. (Doc. 10, Ex. 4 & 5). Petitioner was sentenced to five years imprisonment for each count of tampering with evidence; one year of imprisonment for the count of gross abuse of a corpse; and fifteen years to life for the murder conviction. *Id.* The sentences were ordered to be served consecutively, resulting in a total aggregate prison term of 26 years to life. *Id.*

On November 16, 2010, through counsel, petitioner filed a timely appeal to the Ohio

---

[1] In Case No. B 0905646 petitioner was charged with one count of tampering with the evidence. (*See* Doc. 10, Ex.

Court of Appeals, First Appellate District.  (Doc. 10, Ex. 8).  Petitioner raised the following

assignments of error challenging his convictions and sentence:

> 1.  THE TRIAL COURT ERRED AS A MATTER OF LAW BY ADMITTING IRRELEVANT AND PREJUDICIAL CHARACTER EVIDENCE TO BE HEARD BY THE TRIAL COURT DURING THE COURSE OF THE TRIAL.  (Tp. Vol. 7, pgs. 258-265, 265-279; Tp. Vol. 8, pgs. 403-429).
>
> 2.  THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT PERMITTING APPELLANT TO INTRODUCE HIS PRIOR CONSISTENT STATEMENTS TO REBUT AN EXPRESS OR IMPLIED CHARGE OF RECENT FABRICATION OR IMPROPER INFLUENCE OR MOTIVE.  (Tp. Vol. 11, pgs. 1132-1133).
>
> 3.  THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTIONS FOR MURDER, GROSS ABUSE OF A CORPSE AND TAMPERING WITH EVIDENCE UNDER BOTH INDICTMENTS.  (Trial case number B0905646: Td. 61; Trial case number B0906057: Td. 120).
>
> 4.  THE TRIAL COURT ERRED AS A MATTER OF LAW BY IMPROPERLY SENTENCING APPELLANT TO CONSECUTIVE SENTENCES.  (Trial case number B0905646: Td. 64; Trial case number B0906057: Td. 124).

*Id.* at i-ii.  On July 27, 2011, the Ohio appellate court overruled the assignments of error and

affirmed the judgment of the trial court.  (Doc. 10, Ex. 10).

### Ohio Supreme Court

On September 6, 2011, petitioner filed a pro se notice of appeal to the Ohio Supreme

Court.  (Doc. 10, Ex. 12).  In his memorandum in support of jurisdiction, petitioner raised as

propositions of law the first three assignments of error raised on direct appeal with the Ohio

Court of Appeals.  *See id.*

On November 30, 2011, the Ohio Supreme Court denied leave to appeal and dismissed

the appeal "as not involving any substantial constitutional question."  (Doc. 10, Ex. 14).

---

2).  The remaining charges were charged in Case No. B 0906057.  (*See* Doc. 10, Ex. 3).

### Federal Habeas Corpus

On December 21, 2012, petitioner commenced the instant habeas corpus action.  (Doc. 5).  In the petition, petitioner asserts the following four grounds for relief:[2]

> I.  THE TRIAL COURT ERRED AS A MATTER OF LAW BY ADMITTING IRRELEVANT AND PREJUDICIAL CHARACTER EVIDENCE TO BE HEARD BY THE TRIAL COURT DURING THE COURSE OF THE TRIAL.
>
> II.  THE TRIAL COURT ERRED AS A MATTER OF LAW BY NOT PERMITTING APPELLANT TO INTRODUCE HIS PRIOR CONSISTENT STATEMENTS TO REBUT AN EXPRESS OR IMPLIED CHARGE OF RECENT FABRICATION OR IMPROPER INFLUENCE OR MOTIVE
>
> III.  THE EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW AND/OR AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE TO SUSTAIN APPELLANT'S CONVICTION FOR MURDER, GROSS ABUSE OF A CORPSE AND TAMPERING WITH EVIDENCE UNDER BOTH INDICTMENTS.

(Doc. 5, Brief).

Respondent opposes the petition.  In the return of writ, respondent contends that Ground One is procedurally defaulted and otherwise without merit; Ground Two is without merit; and Ground Three is non-cognizable in part and without merit in part.  (*See* Doc. 10).

## II.  THE PETITION SHOULD BE DENIED.

In this federal habeas case, the applicable standard of review governing the adjudication of the constitutional claims that were raised to and decided by the Ohio courts is set forth in 28 U.S.C. § 2254(d).  Under that provision, a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits by the state courts unless the adjudication either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or

---

[2] Petitioner's brief presents his grounds for relief as propositions of law.  (*See* Doc. 5).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.'  *Otte v. Houk,* 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000)), *cert. denied*, 132 S.Ct. 1743 (2012).  "A state court's adjudication only results in an 'unreasonable application' of clearly established federal law when 'the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'"  *Id.* at 599-600 (quoting *Williams,* 529 U.S. at 413).

The statutory standard, established when the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) was enacted, is a difficult one for habeas petitioners to meet.  *Id.* at 600. As the Sixth Circuit explained in *Otte*:

> Indeed, the Supreme Court has been increasingly vigorous in enforcing AEDPA's standards.  *See, e.g., Cullen v. Pinholster,* __ U.S. __, 131 S.Ct. 1388, 1398, 179 L.Ed.2d 557 (2011) (holding that AEDPA limits a federal habeas court to the record before the state court where a claim has been adjudicated on the merits by the state court).  It is not enough for us to determine that the state court's determination is *incorrect*; to grant the writ under this clause, we must hold that the state court's determination is *unreasonable*. . . .  This is a "substantially higher threshold.". . .  To warrant AEDPA deference, a state court's "decision on the merits" does not have to give any explanation for its results, *Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 784, 178 L.Ed.2d 624 (2011), nor does it need to cite the relevant Supreme Court cases, as long as "neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).

*Id.* (emphasis in original).  The Supreme Court recently extended its ruling in *Harrington* to hold that when a state court rules against a defendant in an opinion that "addresses some issues but

4

does not expressly address the federal claim in question," the federal habeas court must presume, subject to rebuttal, that the federal claim was "adjudicated on the merits" and thus subject to the "restrictive standard of review" set out in § 2254(d). *See Johnson v. Williams*, __ S.Ct. __, No. 11-465, 2013 WL 610199, at *3 (U.S. Feb. 20, 2013).

Although the standard is difficult to meet, § 2254(d) "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings" and "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington*, 131 S.Ct. at 786. In other words, to obtain federal habeas relief under that provision, the state prisoner must show that the state court ruling on the claim presented "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786-87.

The Supreme Court has made it clear that in assessing the merits of a constitutional claim under § 2254(d), the federal habeas court must apply the Supreme Court precedents that controlled at the time of the last state-court adjudication on the merits, as opposed to when the conviction became "final." *Greene v. Fisher*, __ U.S. __, 132 S.Ct. 38, 44-45 (2011); *cf. Otte,* 654 F.3d at 600 (citing *Lockyer v. Andrade,* 538 U.S. 63, 71-72 (2003)) (in evaluating the merits of a claim addressed by the state courts, the federal habeas court must "look to Supreme Court cases already decided at the time the state court made its decision"). In *Greene*, 132 U.S. at 44, the Court explained:

> [W]e held last term in *Cullen v. Pinholster*, 563 U.S. __, 131 S.Ct. 1388, 179 L.Ed.2d 557 (2011), that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the prisoner's claim on the merits. We said that the provision's "backward-looking language requires an examination of the state-court decision at the time it was made." *Id.*, at __, 131 S.Ct. at 1398. The reasoning of *Cullen* determines the result here. As we explained, § 2254(d)(1)

5

requires federal courts to "focu[s] on what a state court knew and did," and to measure state-court decisions *as of 'the time the state court renders its decision.'*" *Id.*, at __, 131 S.Ct. at 1399 (quoting *Lockyer v. Andrade,* 538 U.S. [at] 71-72 . . .; emphasis added).

Decisions by lower courts are relevant "to the extent [they] already reviewed and interpreted the relevant Supreme Court case law to determine whether a legal principle or right had been clearly established by the Supreme Court." *Otte,* 654 F.3d at 600 (quoting *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010), *cert. denied,* 132 S.Ct. 127 (2011)). The writ may issue only if the application of clearly-established federal law is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000) (citing *Williams,* 529 U.S. at 412).

## A. Ground One is procedurally defaulted.

In Ground One, petitioner claims that the trial court erred by admitting irrelevant and prejudicial character evidence during his trial. (Doc. 5, Brief p. 5). Specifically, petitioner argues that "the State called Alisha Straub, Danielle Baker and Nicole Luca to testify that Appellant acted in a 'flirta[t]ious' manner with them, and in Ms. Luca's case, actually kissed her, as a means of proving that Appellant was an adulterer. The State's theory, apparently, was that since Appellant was an adulterer, he must have killed his wife in order to carry on his adulterous ways." *Id.* According to petitioner, the trial court's failure to exclude this testimony resulted in a denial of his right to a fair trial.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28

U.S.C. § 2254(b)(1), (c); *see also Anderson,* 459 U.S. at 6; *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall,* 757 F.2d 94, 97, 99-100 (6th Cir. 1985). If the petitioner fails to fairly present his constitutional claims through the requisite levels of state appellate review to the state's highest court or commits some other procedural default that prevents a merit-based review of the federal claims by the state's highest court, he may have waived the claims for purposes of federal habeas review. *See O'Sullivan,* 526 U.S. at 847-48; *Harris v. Reed,* 489 U.S. 255, 260-62 (1989); *McBee v. Grant,* 763 F.2d 811, 813 (6th Cir. 1985); *see also Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989).

It is well-settled under the procedural default doctrine that the default of a federal claim in the state court may preclude federal habeas review if the state court judgment rests on a state-law ground that is both "independent" of the merits of the federal claim and an "adequate" basis for the state court's decision. *See Harris,* 489 U.S. at 260-62. The Supreme Court has stated:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner fails to comply with a state procedural rule that required him to have done something at trial to preserve the issue for appellate review. *United States v. Frady*, 456 U.S. 152, 167-69 (1982); *Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996).

The Sixth Circuit applies a four-part test to determine if a claim is procedurally defaulted:

> (1) the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule; (2) the court must determine whether the state courts actually enforced the state procedural sanction; (3) it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim; and (4) if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001) (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)).

In the usual case, the adequate and independent state ground doctrine will not apply to bar consideration of a federal claim on habeas corpus review unless the last state court rendering a judgment in the case "clearly and expressly" states that its judgment rests on a state procedural bar. *Harris,* 489 U.S. at 263; *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).[3]  In cases where the last state court to render a reasoned opinion explicitly relies on a procedural bar, the court will presume that a later unexplained order did not silently disregard the procedural default and consider the merits of the claim.  *Ylst v. Nunnemaker,* 501 U.S. 797, 803-04 (1991).

In addition, the rule precluding federal habeas corpus review of claims rejected by the state courts on state procedural grounds applies only in cases where the state rule relied on by the courts is deemed "adequate" or, in other words, involves a "firmly established and regularly followed state practice" at the time that it was applied.  *Ford v. Georgia,* 498 U.S. 411, 423-24 (1991); *Richey v. Mitchell,* 395 F.3d 660, 679 (6th Cir.) (citing *White v. Schotten,* 201 F.3d 743,

---

[3] In *Harris,* the Supreme Court noted that the rule requiring that the state court plainly state that its judgment rests on a state procedural default "applies only when a state court has been presented with the federal claim" raised by the state prisoner as a ground for federal habeas relief.  *Harris,* 489 U.S. at 263 n.9; *see also Teague v. Lane*, 489 U.S. 288, 299 (1989) (plurality opinion) ("The rule announced in *Harris* . . . assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").  The *Harris* Court further noted: "Of course, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that

751 (6th Cir. 2000)), *rev'd on other grounds,* 546 U.S. 74 (2005) (per curiam); *Warner v. United States,* 975 F.2d 1207, 1213 (6th Cir. 1992); *see also Rideau v. Russell,* 342 F. App'x 998, 1002 (6th Cir. 2009). To be considered regularly followed, a procedural rule need not be applied in every relevant case, but rather "[i]n the vast majority of cases." *Dugger v. Adams,* 489 U.S. 401, 410 n.6 (1989); *see also Byrd v. Collins,* 209 F.3d 486, 521 (6th Cir. 2000).

Finally, the state court's adequate and independent finding of procedural default will preclude habeas corpus review of the petitioner's federal claims unless the petitioner can show "cause" for the default and "actual prejudice" as a result of the alleged violations of federal law, or that failure to consider the federal claims will result in a "fundamental miscarriage of justice." *Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In this case, as respondent has argued in the return of writ, petitioner procedurally defaulted the claims raised in Ground One by failing to object to the alleged errors at trial. Ohio's contemporaneous objection rule is a firmly-established, adequate and independent state procedural rule, which serves to foreclose federal habeas review when relied on by the state courts as a basis for denying relief. *See, e.g., Goodwin v. Johnson,* 632 F.3d 301, 315 (6th Cir. 2011) (citing *Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001)); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *see also State v. Murphy*, 747 N.E.2d 765, 788 (Ohio 2001) (noting that Ohio's "waiver rule," which "requires that a party make a contemporaneous objection to alleged trial error in order to preserve that error for appellate review," is "of long standing" and "goes to the heart of the adversary system of justice"). The Sixth Circuit has repeatedly held that "plain error" review by the state appellate court "constitutes enforcement of Ohio's contemporaneous

---

the state court would hold the claim procedurally barred." *Harris,* 489 U.S. at 263 n.9.

objection rule." *See Williams v. Bagley,* 380 F.3d 932, 968-69 (6th Cir. 2004) (and Sixth Circuit cases cited therein); *see also Goodwin*, 632 F.3d at 315.

The Ohio Court of Appeals clearly enforced the state procedural bar by reviewing petitioner's assignment of error under plain error analysis. (*See* Doc. 10, Ex. 10, p. 3). As such, the state appellate court's plain-error review did not constitute a waiver of the state procedural default rules. *Seymour v. Weaver,* 224 F.3d 542, 557 (6th Cir. 2000); *see also Goodwin*, 632 F.3d at 315. The Ohio Supreme Court's later unexplained entry denying petitioner leave to appeal and summarily dismissing the appeal "as not involving any substantial constitutional question" must be presumed to rely on the same state procedural ground. *See Ylst*, 501 U.S. at 803. *See also Abshear v. Moore*, 354 F. App'x 964, 970 (6th Cir. 2009); *Knuckles v. Brigano*, 70 F. App'x 830, 840 (6th Cir. 2003).

Therefore, the claims alleged in Ground One of the petition are barred from review in this proceeding unless petitioner can demonstrate cause for and prejudice from his procedural default or that a fundamental miscarriage of justice will occur if the ground for relief is not considered on the merits by this Court. *See, e.g., Coleman,* 501 U.S. at 750; *Harris,* 489 U.S. at 262; *Murray,* 477 U.S. at 485.

In response to the return of writ, petitioner contends "[i]t's not the fault of Petitioner Pro Se what his trial lawyer did or didn't do during trial or that his [appellate] lawyer didn't argue ineffective counsel in Strut's 1st district court appeal." (Doc. 11, p. 1). Ineffective assistance of counsel can provide cause for a procedural default unless the ineffective assistance of appellate counsel claim was itself procedurally defaulted. *See Murray,* 477 U.S. at 488-89; *see also Edwards v. Carpenter*, 529 U.S. 446, 452 (2000); *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). In this case, petitioner procedurally defaulted his ineffective assistance of

counsel claims by failing to present the claims to the Ohio courts.  Accordingly, the ineffective assistance of counsel cannot serve as cause for the procedural default of Ground One of the petition.

Finally, petitioner has not demonstrated that a fundamental miscarriage of justice will occur if his procedurally-defaulted claims for relief are not considered or, in other words, that the alleged errors "probably resulted in the conviction of one who is actually innocent."  *See Murray,* 477 U.S. at 495-96.  *See also Schlup v. Delo,* 513 U.S. 298, 327 (1995); *Bonilla,* 370 F.3d at 498.  To establish a credible claim of actual innocence sufficient to excuse his procedural defaults, petitioner must "support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial."  *Schlup,* 513 U.S. at 324.

Petitioner must also show "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt" in light of all the evidence, including that evidence alleged "to have become available only after the trial."  *Id.* at 327-28.  "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt."  *Id.* at 329.  The Court notes that actual innocence, which would permit collateral review of a procedurally defaulted claim, means factual innocence, not mere legal insufficiency.  *Bousley v. United States,* 523 U.S. 614, 623 (1998).  *See also Hilliard v. United States*, 157 F.3d 444, 450 (6th Cir. 1998).  The actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'"  *Schlup,* 513 U.S. at 321.

Petitioner has failed to establish a credible claim of actual innocence under the *Schlup* standard as he has not supported his allegations of constitutional error with any new evidence of

actual innocence.  Petitioner's habeas petition and traverse include arguments based solely on the facts and arguments presented during his trial and on appeal.  Accordingly, the Court is unable to reach the merits of his claims.  "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." *Schlup,* 513 U.S. at 316.  Although petitioner alleged on direct appeal and in Ground Three of the instant petition that the evidence was insufficient to support his convictions, establishing actual innocence requires a showing of factual innocence, not mere legal insufficiency.  *See Bousley,* 523 U.S. at 623; *Hampton v. United States,* 191 F.3d 695, 703 (6th Cir. 1999). Therefore, petitioner has not demonstrated that his procedural defaults should be excused under the "fundamental miscarriage of justice" exception.

Accordingly, petitioner is not entitled to relief based on Ground One of the petition.

**B.  Ground Two is non-cognizable, procedurally defaulted and without merit.**

In Ground Two of the petition, petitioner claims that the trial court erred by not permitting him to introduce prior consistent statements.  (Doc. 5, pp. 6-7).  During petitioner's trial testimony, defense counsel attempted to introduce audio recordings of petitioner's interviews with police detectives in order to demonstrate that petitioner was concerned about the disappearance of his wife.  According to the defense, the interviews were offered to rebut witness testimony offered in the state's case-in-chief that petitioner appeared disinterested in what had happened to his wife.  (*See* Doc. 10, Transcript pp. 1131-32; Doc. 11, p. 2).

As an initial matter, to the extent that petitioner argues that violations of state law justify habeas corpus relief, his contention is without merit because this Court is without jurisdiction to review issues of state law on federal habeas corpus review.  This Court may grant a writ of

habeas corpus only if petitioner, pursuant to the judgment of a State court, "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The federal courts may not issue a writ of habeas corpus "on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Smith v. Sowders*, 848 F.2d 735, 738 (6th Cir.1988). "Errors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994) (citing *Logan v. Marshall*, 680 F.2d 1121, 1123 (6th Cir. 1982)).

Petitioner has waived any claim of constitutional error because he failed to fairly present his constitutional claims to the state courts. "Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Fulcher v. Motley,* 444 F.3d 791, 798 (6th Cir. 2006) (quoting *Newton v. Million,* 349 F.3d 873, 877 (6th Cir. 2003)); *see also* 28 U.S.C. § 2254(b), (c); *Anderson v. Harless,* 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848 (1999); *Hafley v. Sowders,* 902 F.2d 480, 483 (6th Cir. 1990); *Leroy,* 757 F.2d at 97, 99-100. Moreover, it is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *Fulcher,* 444 F.3d at 798; *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the state courts of the claim's federal nature. *McMeans,* 228

13

F.3d at 681. Under those guidelines, the fair presentation requirement is satisfied if the petitioner raised the federal issue in the state courts by (1) relying on federal cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Id.* (citing *Franklin*, 811 F.2d at 326).

In this case, petitioner failed to present the claim in Ground Two as a constitutional issue on direct appeal or on further appeal to the Ohio Supreme Court. Instead, petitioner argued that the alleged error amounted to an error under state evidentiary rules. (*See* Doc. 10, Ex. 8, 12). Petitioner did not rely on federal or state cases employing constitutional analysis, nor can the Court conclude that petitioner phrased his claim in terms of constitutional law or alleged facts well within the mainstream of constitutional law. Because petitioner has not provided any cause for the procedural default of this claim nor demonstrated that a fundamental miscarriage of justice will occur if his defaulted claim is not considered, Ground Two of the petition is barred from review.

Finally, even if the Court could find that an error of constitutional dimension occurred in petitioner's case, he is not entitled to relief unless the error also had a "substantial and injurious effect or influence in determining the jury's verdict." *See, e.g., Calderon v. Coleman,* 525 U.S. 141, 145-47 (1998); *O'Neal v. McAninch,* 513 U.S. 432, 435-36 (1995); *see also Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993) (applying standard of review enunciated in *Kotteakos v. United States,* 328 U.S. 750 (1946), a federal direct review case, to federal collateral review proceeding under 28 U.S.C. § 2254). Under this "harmless error" standard, if upon review of the entire record, the court is convinced that "the error did not influence the jury, or had but slight

14

effect," the conviction must stand.  *O'Neal,* 513 U.S. at 436-38; *Kotteakos,* 328 U.S. at 764.  On

the other hand, if the court "is left in grave doubt" and "cannot say, with fair assurance, after

pondering all that happened without stripping the erroneous action from the whole, that the

judgment was not substantially swayed by the error," the court must find that the error had a

substantial influence on the jury and the conviction cannot stand.  *O'Neal,* 513 U.S. at 436-38;

*Kotteakos,* 328 U.S. at 765.

      After review of the entire record the undersigned is convinced that to the extent any

constitutional error stemmed from the trial court's ruling on the admissibility of petitioner's prior

consistent statements, such error was harmless.  In offering the audio recordings as evidence,

defense counsel argued that the recordings were intended to rebut testimony regarding

petitioner's mood while he was in police custody, "such as his apparent disinterest in what

happened to his wife."  (Doc. 10, Transcript pp. 1131-32).  However, in light of the substantial

evidence presented at trial and summarized below, the undersigned is confident that the alleged

error did not have a substantial influence on the trial judge's decision.  Therefore, petitioner is

not entitled to relief because any error of constitutional dimension was harmless in light of the

evidence offered against him.

      Accordingly, in sum, to the extent petitioner seeks relief solely on the basis of a violation

of Ohio's evidentiary rules or other error under Ohio law, he does not state a cognizable federal

constitutional claim subject to review in this proceeding.  To the extent petitioner claims he was

denied a fair trial, petitioner has waived this claim by failing to present the claim to the Ohio

courts as a constitutional issue.  Finally, having found that the alleged error did not have a

substantial influence on the trial judge's decision, petitioner is not entitled to habeas relief

because the alleged error was harmless.

**C. Ground Three is not cognizable in part and without merit in part.**

In Ground Three, petitioner contends that the evidence supporting his convictions were insufficient as a matter of law and against the manifest weight of the evidence. (Doc. 7, p. 4).

A "manifest weight of evidence" claim, which is based on a state law concept that is "both quantitatively and qualitatively different" from a constitutional due process sufficiency of evidence standard, *see Tibbs v. Florida,* 457 U.S. 31, 41-47 (1982), and *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (1997), *superseded by state constitutional amendment on other grounds in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997), raises an issue of state law only that is not cognizable in a federal habeas corpus proceeding such as this. *See* 28 U.S.C. § 2254(a); *Pulley,* 465 U.S. at 41.

The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without proof sufficient to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

However, under Ohio law, a claim that a verdict was against the manifest weight of the evidence–as opposed to one based upon insufficient evidence–requires the appellate court to act as a "thirteenth juror" and to review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 485 N.E.2d 717, 720 (1st Dist. Ohio 1983); *cf. Tibbs v. Florida*, 457 U.S. 31

(1982).  "Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, petitioner's claim that his convictions were against the manifest weight of the evidence cannot be considered by this Court."  *Mason v. Brunsman*, No. 1:07-cv-1020, 2009 WL 2169035, at *29 (July 16, 2009 S.D. Ohio ) (Spiegel, J.; Black, M.J.).

The Court, however, does have jurisdiction to consider petitioner's sufficiency of the evidence claim.  The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case from conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he or she is charged.  *Jackson*, 443 U.S. at 316; *In re Winship,* 397 U.S. 358, 364 (1970).  In analyzing claims of insufficient evidence, the Court must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319 (emphasis in original).  This standard reserves to the trier of fact the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts.  *Id.* at 318-319.

On habeas corpus review, the Court "does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court."  *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)).  "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim."  *Id.* at 189-99.  In addition, circumstantial evidence may be sufficient to support a conviction and such evidence need not remove every reasonable hypothesis except that of guilt.  *See Jackson,* 443 U.S. at 326; *Walker v. Russell*, 57 F.3d 472, 475 (6th Cir. 1995); *Jamison v.*

17

*Collins,* 100 F. Supp.2d 647, 705 (S.D. Ohio 2000), *aff'd,* 291 F.3d 380 (6th Cir. 2002).

Therefore, the question for this Court is whether the Ohio Court of Appeals' application of the

"no rational trier of fact" test, as articulated in *Jackson* and adopted as a matter of Ohio law in

*State v. Jenks*, 574 N.E.2d 492 (Ohio 1991), was contrary to or an unreasonable application of

that test to the facts of this case.

> In the instant case the Ohio Court of Appeals found that sufficient evidence was provided

for the trial court to have found petitioner guilty beyond a reasonable doubt:

> {¶15} In his third assignment of error, Strutz contests the sufficiency and weight
> of the evidence underlying his convictions for murder, abuse of a corpse, and both
> counts of tampering with evidence.  This assignment is not well taken.

> {¶16}  When reviewing the sufficiency of the evidence, this court must view all
> probative evidence and reasonable inferences in the light most favorable to the
> prosecution to determine whether any rational trier of fact could have found all
> the essential elements of the offense beyond a reasonable doubt.  In contrast,
> when reviewing the weight of the evidence, this court must independently weigh
> the evidence and consider the credibility of the witnesses to determine whether
> the trier of fact lost its way and created a manifest miscarriage of justice in
> finding the defendant guilty.

> {¶17} With respect to his convictions for murder and abuse of a corpse, Strutz
> argues that the state did not prove that he was the person who had murdered his
> wife and dismembered her.  We disagree.  The record contains overwhelming
> circumstantial evidence that Strutz murdered and dismembered his wife.  First,
> the torso of Kristen's body was found in one of Strutz's garbage cans within a
> black garbage bag that he had purchased the day Kristen disappeared.  Second,
> although early in the morning on the day that she had disappeared, Kristin had
> allegedly sent Strutz a text message that said she was going to the store, her purse
> was found in Strutz's car and her cellular phone was left at home.  Her car was
> also left in the driveway with the door open and the key in the ignition.  Finally,
> Kristen's crutches, which she needed to move around because she recently had
> had foot surgery, were left in the house.  Despite noticing all of these things,
> Strutz failed to call the police and report his wife missing until after 4:30 p.m.
> Instead, he took his children out to a park, to get ice cream, and to a Dollar Store,
> where he bought several bottles of Clorox and a mop.  He also stopped at a
> Kroger store to buy garbage bags.  Moreover, on the side of Strutz's house, there
> was fat and human bone that, according to forensic anthropologist Elizabeth
> Murray, was part of a dismemberment or a cleanup site.  The bone found at this
> site had teeth marks from a saw on it.  Dr. Symmes, an expert forensic

anthropologist, opined that he could not rule out the hacksaw found in Strutz's garbage can as being the saw that had been used to cut the bone found on the side of the house.

{¶18}  Next, Strutz argues that the state did not prove that he had purposely killed Kristin.   But evidence of concealment of Kristen's body parts and her dismemberment demonstrated that Strutz had attempted to cover up the murder, thereby evincing a consciousness of guilt.

{¶19}   Based on the totality of the circumstances, we hold that there was sufficient evidence to prove that Strutz had purposefully murdered Kristin and dismembered her body.  Further, we cannot say that the trial court created a manifest miscarriage of justice by finding Strutz guilty of murder and abuse of a corpse.

{¶20}   With respect to the tampering-with-evidence charges, we note that one charge dealt with concealing Kristen's body and the other involved concealing the saws that may have been used to dismember Kristen's body.

{¶21}   R.C. 2921.12(A)(1) provides that "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶22}   Strutz argues that his convictions for tampering with evidence cannot stand because the state did not show that he had known that an "official proceeding or investigation" for murder was in progress.   But when Strutz murdered Kristen, he knew that an official investigation was likely to be instituted, and as a result there was sufficient evidence to demonstrate that Strutz had tampered with the evidence.  Additionally, based on the foregoing, we cannot say that the trial court created a manifest miscarriage of justice by finding Strutz guilty of both counts of tampering with the evidence.

(Doc. 10, Ex. 10, pp. 6-8) (footnotes and citations omitted).

After review of the entire record, the Court finds that petitioner has not demonstrated that the Ohio Court of Appeals' decision was contrary to or an unreasonable application of federal law.  Although the Ohio Court of Appeals cited only state cases, the court correctly identified and applied the clearly-established standard of review enunciated by the Supreme Court in *Jackson* in assessing petitioner's claims and reasonably determined that "*any* rational

trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

*Jackson*, 443 U.S. at 319 (emphasis in original).

As the Ohio appellate court concluded, the record contains sufficient evidence to sustain petitioner's convictions. With regard to the murder and gross abuse of a corpse convictions, petitioner argues that the prosecution failed to demonstrate that anyone purposefully caused the death of his wife or, if a homicide did occur, that he was the one who murdered or dismembered her. (Doc. 5, p. 9). Petitioner also contends that there was insufficient evidence to support his tampering with evidence convictions, as he contends that there "was no evidence that he placed the torso into the garbage can" and that there was not an official investigation going on when he put the saws into the garbage can. *Id.* at 11. Petitioner raised these same arguments on appeal and the undersigned agrees with the Ohio appellate court that the state presented sufficient evidence to sustain his convictions.

Although the coroner could not determine a precise cause of death, the coroner testified that the victim's death was a homicide. (Doc. 10, Transcript p. 843). Furthermore, the victim's torso[4] was found in petitioner's garbage can, concealed in multiple garbage bags that were similar in size, color and construction as garbage bags purchased by petitioner the day of her disappearance. (See Doc. 10, Transcript pp. 509-10, 631-38, 971-76).

Ample testimony was offered to suggest that the victim's body was dismembered on petitioner's property. Forensic anthropologist Dr. Beth Murray, testified that the side of petitioner's home had a "very apparent odor of decomposition," suggesting that it could have been a dismemberment or cleanup site. *Id.* at 572, 582. Murray further testified that the grass was permeated with decomposition fluids and that she observed fat globules and bone fragments

---

[4] At trial the parties stipulated that the torso discovered was from the victim. (*See* Doc. 10, p. 851).

20

in the grass, including a fragment of bone that appeared to have been removed from a human femur with a saw or serrated blade.  *Id.* at 582-91.  Dr. Symes, a forensic anthropologist specializing in bone trauma, also testified that the bone fragments found in the yard matched the left femur of the torso and the striations in the bone were consistent with a hacksaw found on petitioner's property.  *Id.* at 900, 922.

In addition, the testimony offered suggested that the saws found on petitioner's property were burned in petitioner's fire pit between the time of the victim's disappearance and the police investigation.  *See id.* at 242, 369, 855-56, 891.  Petitioner's neighbor, a firefighter, testified that petitioner's yard was covered in smoke at 6:20 a.m. on the morning of the victim's disappearance, which he described as "very heavy smoke" suggesting that petitioner had burnt something very wet.  *Id.* at 454, 463-64, 469.  Petitioner's neighbor further testified that petitioner stated that the police "had nothing on him," after he returned from police questioning. *Id.* at 456.  In support of the tampering with evidence conviction, the prosecution also offered testimony petitioner moved the saws to the garbage bins after the police were called to investigate his wife's disappearance.  *Id.* at 160, 374-75.

In addition, petitioner purchased four gallons of bleach on the day his wife was reported missing, which he claimed to use to clean the garbage cans and pool.  *Id.* at 390, 644.  However, Officer Weldele testified that despite their being a very strong smell of bleach coming from the garbage cans, that they did not appear to have been cleaned.  *Id.* at 366-68.  Additionally, Officer Hunt testified that bleached dark clothing and towels were found damp in petitioner's washing machine, including one set each of petitioner's and the victim's clothing.  *Id.* at 501-507.

As noted by the Ohio appellate court, petitioner did not report his wife missing until after 4:30 p.m.  Petitioner claimed to have received a text message from the victim at 8:00 a.m.,

indicating that she was going to the grocery store.  *Id.* at 283.  However, the victim's phone was in their home, her purse was found in the back of petitioner's truck, and her crutches were also located within their home.  *Id.* at 283, 285, 294.  Additionally, petitioner stated that he found her car in the driveway with the keys in the ignition and the door open.  *Id.* at 284.  Officers responding to the missing person call and involved in the investigation testified that petitioner did not ask any questions about what officers were doing to find his wife or otherwise attempt to assist in finding her.  *Id.* at 383, 499, 514.  Furthermore, trial testimony from the officers reported multiple inconsistencies in petitioner's responses to his whereabouts on the day of the victim's disappearance.[5]

When viewing all of the evidence in the light most favorable to the prosecution, and for the reasons stated by the state appellate court, this Court concludes that the evidence was constitutionally sufficient to sustain petitioner's convictions.  Although petitioner offers his interpretation of the above facts in his petition and traverse (*see* Doc. 11, pp. 2-7), it is not the province of this court to reweigh the evidence on habeas review.[6]  *Abramajtys*, 319 F.3d at 788.  The Ohio Court of Appeals' adjudication of petitioner's sufficiency-of-evidence claim involved a reasonable application of the *Jackson* standard and was based on a reasonable determination of the facts in light of the evidence presented at trial.  Accordingly, the undersigned concludes that

---

[5]  For example, petitioner did not disclose that he had purchased the garbage bags until officers found a receipt in his truck and confronted him with it, according to the trial testimony.  *Id.* at 509-10.  Petitioner also stated that he purchased one gallon of bleach at Dollar General and that he had stopped at United Dairy Farmers for ice cream.  *Id.* at 301-303.  Security footage from both stores indicated that petitioner was never at the United Dairy Farmers location and that petitioner purchased four gallons of bleach at the Dollar General.  *Id.* at 509, 641-42.

[6]  Prior to finding petitioner guilty, the trial judge summarized the facts of the case as follows: "It has been my experience over the past 38 years that by and large, cases are decided on the facts, and this case is no different. Facts may be developed, facts may be expanded, and facts may be explained, but they cannot be changed.  You cannot make good facts out of bad or bad facts out of good.  The facts are what the trier of the fact determines the facts to be based up on the evidence presented and reasonable inferences permitted therefrom.  Based upon all the facts presented in this case, I am convinced beyond doubt, and certainly beyond all reasonable doubt, that the State of Ohio has proven John P. Strutz, purposely caused the death of his wife, Kristan Strutz, and that he grossly abused her corpse.  And that he tampered with her remains, and other evidence, namely, the saws, in an effort to conceal his

petitioner is not entitled to relief based on the claim raised in Ground Three of the petition challenging the sufficiency of the evidence supporting his convictions.

Accordingly, in sum, petitioner is not entitled to habeas corpus relief based on the grounds alleged in his petition because: (1) petitioner procedurally defaulted and waived the claims raised in Ground One by failing to object to the alleged errors at trial; (2) petitioner failed to present any cognizable constitutional claim raised in Ground Two to the Ohio Courts; and (3) the sufficiency-of-the-evidence claims raised in Ground Three are without merit.  It is therefore **RECOMMENDED** that petitioner's petition for a writ of habeas corpus (Doc. 4) be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1.  Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 4) be **DENIED** with prejudice.

2.  A certificate of appealability should not issue with respect to petitioner's claims for relief as raised in Grounds One and Two, which this Court has concluded are waived and thus barred from review on a procedural ground, because "jurists of reason would not find it debatable as to whether this Court is correct in its procedural ruling" under the first prong of the applicable two-part standard enunciated in *Slack v. McDaniel,* 529 U.S. 473, 484-85 (2000).

A certificate of appealability should not issue with respect to Ground Three of the petition, which was addressed on the merits herein, because petitioner has not stated a "viable claim of the denial of a constitutional right" or that the issues presented are "adequate to deserve encouragement to proceed further."  *See Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (*citing Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983)); *see also* 28 U.S.C. § 2253(c); Fed. R.App. P. 22(b).

crimes."  (Doc. 10, Transcript pp. 1293-94).

3.   With respect to any application by petitioner to proceed on appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and therefore **DENY** petitioner leave to appeal *in forma pauperis* upon a showing of financial necessity.  *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).


　　*s/ Stephanie K. Bowman*　　　
Stephanie K. Bowman
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

JOHN P. STRUTZ,                                       Case No. 1:11-cv-900
      Petitioner,

                                               Spiegel, J.
      vs.                                             Bowman, M.J.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,
      Respondent.


## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.   This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).